**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
UNITED STATES OF AMERICA,                        :
                                                 :          11 Cr. 12 (RMB)
                          - against -            :
                                                 :          **DECISION & ORDER**
TODD LABARCA,                                    :
                          Defendant.             :
---------------------------------------------------------------x

      Having reviewed the record herein, including without limitation: **(1)** Defendant's Motion for compassionate release filed on behalf of Todd LaBarca ("Defendant" or "LaBarca") by attorney Ronald Rubinstein, Esq., dated July 2, 2020, Defendant's Reply dated August 10, 2020, and Defendant's Surreply dated August 21, 2020.[1] "LaBarca's condition has deteriorated under the B.O.P's care and the evidence that the B.O.P. cannot provide him adequate medical care now, let alone if he should contract Coronavirus, this factor weighs in favor of reducing Mr. LaBarca's sentence under the First Step Act." See Def. Mot. at 32; **(2)** the Government's Opposition, dated August 3, 2020, opposing LaBarca's early release from incarceration. "The motion should be denied because the Defendant poses a danger if released, and the Section 3553(a) factors weigh heavily against release." See Gov't Opp. at 1. The Government also states that the "Defendant has served less than half of the 23-year sentence that was imposed for his role in a truly heinous murder, which he organized in the midst of a lifetime of criminal activity." Id.; and **(3)** Letters submitted by individuals who support the early release of LaBarca from incarceration, **the Court denies LaBarca's Motion for a compassionate release, as follows:**[2]

---

[1] Mr. Rubinstein also submitted LaBarca's BOP medical records in unredacted form. The Court is filing these medical records under seal. See United States v. Daugerdas, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

[2] **Any issues or arguments not specifically mentioned in this Decision and Order have been considered by the Court and rejected, including Defendant's request that the Court recommend to the BOP that he be transferred to home confinement.**

## I. Background

On April 26, 2012, LaBarca, who is 49 years old, pled guilty of racketeering, in violation of Title 18, United States Code, Section 1962(c), and of conspiracy to commit assault in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(6). See Apr. 26, 2012 Plea Hr'g Tr. Defendant's allocution included the following: "Sometime between the late 1980s and 2011, I was associated with an enterprise whose activities affected interstate commerce. During this time, I participated in the affairs of the enterprise through committing certain racketeering acts that constituted a pattern of racketeering activity. [S]pecifically, with regard[] to racketeering act 1, between December 2001 and January 2, 2002, I agreed with one or more persons to engage in or cause the performance of the murder of Martin Bosshart, in violation of United States penal law. With regard[] to racketeering act 2, . . . between the mid '90s and 2011, I knowingly distributed and possessed with intent to distribute mixtures and substances containing a detectable amount of marijuana in violation of Title 21, United States Code, Sections 812, 841(a)(1), Title 18, United States [Code], Section 2. With regard to racketeering act 3, . . . between 1991 and 2011, I intentionally and knowingly distributed and possessed with intent to distribute Ecstasy in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(c), and Title 18, United States Code, Section 2. With regard to racketeering act 4, in or about 2009, I agreed with others to obtain money from an individual whose consent to pay these monies was to be induced by an implied threat that if he did not pay, that he would suffer physical harm or damage to his property. With regard[] to racketeering act 5, between 1990 and 2011, I conducted a sports betting operation in violation of New York State penal law and the gambling operations spanned in excess of 30 days and had gross revenues of over $200,000 in one single day. With regard to Count 2, in or about 2002, I conspired with others to commit assault with a dangerous weapon against Martin Bosshart for the purpose of gaining entrance to [or] maintaining or increasing my position in an enterprise engaged in racketeering activity." See Apr. 26, 2012 Plea Hr'g Tr. at 35:5-25, 36:1-15.

On July 12, 2012, the Court sentenced LaBarca to twenty-three (23) years in prison to be followed by 3 years of supervised release. See July 12, 2012 Judgment. LaBarca is incarcerated at Federal

Correctional Institution Schuylkill located in Minersville, Pennsylvania ("FCI Schuylkill"). See Gov't Opp. at 4. His currently projected release date is August 25, 2030. Id. LaBarca has served less than half of the twenty-three-year sentence imposed.

## II. Legal Standard

18 U.S.C. § 3582(c)(1)(A) provides in part:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and "the reduction is consistent with this policy statement." Application Note 1 states in part that extraordinary and compelling reasons may exist if: (1) "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" or (2) "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

## III. Findings

The Court finds as follows:

1. On April 12, 2020, Mr. LaBarca submitted an application to the Warden at FCI Schuylkill requesting that the BOP bring a motion for compassionate release or transfer LaBarca to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). The Warden denied the application on May 11, 2020. See Def. Mot. at 10; Def. Mot. Ex. A. On May 20, 2020, LaBarca

appealed the denial of his request for compassionate release and/or a transfer to home confinement. See Gov't Opp. at 4-5. On May 26, 2020, LaBarca's appeal was rejected by the Warden who stated: "A review of your case indicates your medical history does not meet the criteria . . . regarding a Compassionate Release/RIS for inmates with medical conditions. You are currently able to independently adapt to activities of daily living and are able to perform self-maintenance activities in a correctional environment. . . [Y]our concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. It should be noted at this time FCI Schuylkill does not have any confirmed COVID-19 staff or inmate cases." See Def. Mot. Ex. B.

2. According to Defendant's Motion, LaBarca suffers from "two respiratory issues, asthma and obstructive sleep apnea" and he "has been in constant pain for seven years due to Cervical radiculopathy, a degenerative disease resulting in Spinal Stenosis." See Def. Mot. at 11, 29. LaBarca also suffers from, among other conditions, "severe obesity," "Barrett's syndrome," "hypertension," "high cholesterol," "diabetes," and "severe knee pain." Id. at 13-16. While "in B.O.P. custody, [Defendant's] right arm has atrophied and he has gained almost 70 pounds." Id. at 31.

3. The Government acknowledges that LaBarca's BOP medical records reflect that LaBarca has, among other conditions, "severe obesity," "asthma," is "diabetic," has "spinal stenosis," "hyperlipidemia," and "Barrett's syndrome." See Gov't Opp. at 5-6. The Government "recognizes that the defendant has supplied a basis for finding that extraordinary and compelling circumstances exist under Section 3582 based on [] his obesity and Type II diabetes." Id. at 14. But, according to the Government, Defendant's Motion "should be denied because . . . the defendant's release would pose a danger to the community, and the Section 3553(a) factors weigh heavily in favor of rejecting the defendant's request for a reduction of his sentence." Id. at 6.

4. LaBarca "is currently receiving active medical care." See July 17, 2020 Galst Med. R. at 2. BOP medical records reflect care, treatment, and medication for, among other conditions, "hyperlipidemia," "hypertension," "asthma," "tonsillitis," "gastroesophageal reflux," "obstructive sleep apnea,"

4

"dermatitis," "chronic . . .[n]eck pain," and "chronic back pain." See, e.g., Def. Mot. Ex. D at 1, 3, 4, 7, 8, 9, 10, 11, 24; see also Oct. 2, 2018 BOP Med. R. (reflecting that LaBarca informed BOP medical personnel that he "d[id] not want DM [diabetes] medications as '[he's] not a medication taker'").

5. LaBarca also contends that surgery for back and neck pain has been delayed due to the pandemic. See Def. Mot. at 13. BOP medical records appear to reflect that LaBarca refused his scheduled surgery. See, e.g., Oct. 2, 2019 BOP Med. R. ("[LaBarca] reports his wife is RN and advised him [LaBarca] should not have surgery based on his MRI report and s/s [signs and symptoms]."). According to BOP medical records: "Inmate Labarca requesting not to have pending surgery. States 'I talked to my wife and it's just not a good idea with everything going on and I might be going home soon.' Discussed treatment recommended per neurosurgery and possible consequences/and or complications for refusal of treatment. Inmate verbalized understanding and signed medical treatment refusal." See June 25, 2020 BOP Med. R.

   Defense counsel states that "it was Mr. LaBarca's belief that when he signed the 'refusal' . . . that what he was refusing was not an appointment for surgery, but rather that he was refusing consent to a trip to the hospital for the sole purpose of signing paperwork." See Def. Reply at 4.

   According to the Government, "LaBarca's back trouble . . . has no impact on his risk of contracting or becoming seriously ill from COVID-19. This condition can hardly form the basis for LaBarca's release when he himself elected to defer the surgery that would have alleviated the issue this past June." See Gov't Opp. at 14.

6. Defense counsel also contends that LaBarca does not "have a sleep apnea machine at F.C.I. Schuylkill" although he had access to such a machine at a prior BOP institution. See Def. Mot. at 11. BOP medical records appear to reflect that LaBarca was authorized to have C-Pap equipment with humidifier, medium full mask, but that LaBarca "refused." See Sept. 14, 2015 BOP Med. R. According to the Government, "BOP medical records do not support [LaBarca's] claim to suffer from obstructive sleep apnea – they indicate that the condition resolved in August 2016." See Gov't Opp. at 6. Dr. Gerald Galst, MD, FACC, Montefiore Einstein Heart and Vascular Care, in a report, dated July

5

17, 2020 and prepared at the request of defense counsel, Ronald Rubinstein, Esq., states the condition is ongoing but also that "LaBarca voluntarily stopped using a CPAP machine to treat the condition in '2015, because it was too uncomfortable for him.'" Id.

LaBarca has advised BOP that "Since he became incarcerated, and stopped smoking, his breathing is so much better. He 'rarely' uses his inhaler." See July 13, 2015 BOP Med. R. BOP medical records also reflect that LaBarca "[d]oesn't really use albuterol [for asthma] at all" and that he "only uses albuterol when [it] gets really hot out – otherwise fine." See Feb. 4, 2019 BOP Med. R.; July 22, 2019 BOP Med. R.

7. With respect to the COVID-19 pandemic, according to the Government, "FCI Schuylkill has informed the Government that the one inmate who has tested positive has had *no* contact with any other inmates at the facility. The inmate surrendered to the facility to begin serving a prison sentence. Per the BOP's policies, the inmate was tested for COVID-19 and, based on the positive result, was appropriately placed in medical isolation." See Gov't Opp. at 12-13. As of October 27, 2020, according to the BOP website Coronavirus update, it appears that only 1 of the nearly 1,035 inmates at FCI Schuylkill has tested positive and is now recovered for COVID-19. See COVID-19 Cases, BOP, https://www.bop.gov/coronavirus/ (last visited Oct. 27, 2020).

**Dangerousness**

8. It is the Court's conclusion that Defendant's Motion should be denied because LaBarca poses a danger to the community. *See United States v. Gil*, 2020 WL 2611872, at *2 (S.D.N.Y. May 22, 2020) ("[T]he Court finds that releasing Defendant would be contrary to the Sentencing Commission's directive that courts should deny compassionate release to defendants who pose a danger to the community."). Dangerousness renders LaBarca ineligible for early release. *See United States v. Tisdale*, 2020 WL 5441584, at *3 (S.D.N.Y. Sept. 9, 2020) ("the Court cannot conclude that [defendant] is not a danger to the safety of the community . . . . [and] the relevant §3553(a) factors outweigh any extraordinary and compelling reasons warranting compassionate release") (internal citation and quotations omitted); *see also United States v. Ward*, 823 F. App'x 418, 419 (6th Cir. Sept.

6

29, 2020) (affirming district court decision denying compassionate release because "[defendant] was not eligible for compassionate release because he would be a danger to the community if he were released"); *United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Ca. May 18, 2020) ("[defendant] poses a 'continuing danger' to the community that renders him ineligible for release").

Among other things, Defendant pled guilty to a very serious crime which included, as one of the racketeering acts, a conspiracy to commit murder. See Apr. 26, 2012 Plea Hr'g Tr. As part of the racketeering count to which he pled, LaBarca accepted responsibility for Conspiracy to Commit Murder, Marijuana Trafficking, Ecstasy Trafficking, Conspiracy to Commit Extortion, and Operating an Illegal Gambling Business. Id. at 35:5-36:10; *see also United States v. Urso*, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019) ("[T]he court is unable to conclude that Petitioner no longer presents a danger to the safety of any other person or to the community. . . . The serious nature of Petitioner's criminal behavior is not in dispute, as he pleaded guilty to one count of racketeering . . . illegal gambling, conspiracy to commit murder . . . and extortion conspiracy."). LaBarca has a criminal history category of IV, which includes prior convictions for larceny, possession of stolen mail, promoting gambling (two offenses), and attempted coercion. See Gov't Opp. at 2. And, he was under court supervision (parole or probation) at the time he participated in the racketeering acts described above. Id.; *see also United States v. Johnson*, 2020 WL 5369200, at *6 (D. Conn. Sept. 8, 2020) ("that [defendant] committed the instant crime *while on supervised release for an earlier conviction* militates strongly against returning him to the community").

LaBarca "orchestrated the cold-blooded murder of someone who believed [LaBarca] to be [his] friend." See Gov't Opp. at 6. "He did so while surrounded and supported by [persons] who now claim that they will help keep [LaBarca] on the straight and narrow if he is released." Id. at 6-7. According to the Government, LaBarca was a "decades-long participa[nt] in the Gambino crime family's enterprise" and "is a dangerous man with deep mafia ties who has shown himself capable of murder." Id. at 7; *see United States v. Montevecchi*, 2020 WL 3051335, at *2 (S.D.N.Y. June 8, 2020) ("[The Court] do[es] not take lightly . . . that some of these ailments, along with [defendants] age, are

7

COVID-19 risk factors. . . . But . . . I cannot conclude that release is proper. [Defendant] committed a serious crime while an active participant in an organized crime family[.]") (internal citations omitted).

9. Defendant's Motion also fails to satisfy any of the purposes of sentencing set forth at 18 U.S.C. § 3553(a), including "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." *See United States v. Harris*, 2020 WL 5801051, at *4 (S.D.N.Y. Sept. 29, 2020) ("The Court cannot find that a sentence less than half the length imposed, which [defendant] now seeks, is compatible with the important interests undergirding § 3553(a). . . . To release [defendant] this early in his term of imprisonment would disserve the interests embodied in the Court's original sentencing determination – most significantly, the need for the sentence imposed to reflect the need for just punishment."); *United States v. Myrick*, 2020 WL 6128943, at *5 (E.D.N.Y. Oct. 19, 2020) ("[Defendant] has served less than half his sentence. If [the Court] were to release him now, his sentence would 'fail to reflect the seriousness of the offense, . . . promote respect for the law, . . . [or] provide just punishment for the offense.'"); *see also United States v. Allen*, 819 F. App'x 418, 419 (6th Cir. Aug. 27, 2020) ("In a compassionate release proceeding, as at sentencing, the district court 'is best situated to balance the § 3553(a) factors.'").

## IV. <u>Conclusion & Order</u>

For the reasons set forth above, the Defendant's Motion [Dck. # 1000] and [Dck. # 1003] is respectfully denied.

Dated: New York, New York
       October 28, 2020

*Richard M. Berman*
**RICHARD M. BERMAN, U.S.D.J.**