UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,                :
                                         :       11 Cr. 12 (RMB)
           - against -                   :
                                         :       **DECISION & ORDER**
TODD LABARCA,                            :
                       Defendant.        :
------------------------------------------------------------x

This Decision & Order resolves Defendant Todd LaBarca's "Second Motion to Reduce [His] Sentence," dated March 8, 2021. For the reasons stated below, the motion is respectfully denied.[1]

## I. Background

On April 26, 2012, LaBarca, who at the time was 41 years of age, pleaded guilty to racketeering, in violation of 18 U.S.C. § 1962(c); and conspiracy to commit assault in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(6). Plea Hr'g Tr. at 35:1–36:18. LaBarca's offense level was 40; his criminal history category was V; and his Sentencing Guidelines range was 360 months to life imprisonment. He was also subject to a 276 month statutory mandatory maximum sentence. Sentencing Tr. at 3:22–4:4. On July 12, 2012, the Court sentenced LaBarca to 276 months of imprisonment, followed by 3 years of supervised release. Id. at 30:10–21.

LaBarca is incarcerated at FCI Schuylkill in Pennsylvania. He has served 132 months (approximately 48%) of his 276-month sentence. His projected release date is August 25, 2030. Inmate Database, BOP.

On October 28, 2020, the Court denied LaBarca's first motion for compassionate release, which was dated July 2, 2020. In his first motion, LaBarca had contended that: **(i)** "he suffers from . . . Spinal stenosis, chronic pain, Barrett's esophagus, hypertension[,] hyperlipidemia, . . . asthma[,] diabetes, and severe[] obes[ity] . . . . which put[] him at an elevated risk of getting severely ill or dying [from] Coronavirus"; and **(ii)** "LaBarca has been rehabilitated by his time in prison, . . . and [] he would not pose a danger to the

---

[1] Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.

1

community were he to be released early." First Mot. at 25, 31, 46. The Court found, among other things: **(i)** that "LaBarca [was] receiving active medical care" for his medical conditions; **(ii)** that "[he] poses a danger to the community"; and **(iii)** that "[he] fails to satisfy any of the purposes of sentencing set forth at 18 U.S.C. § 3553(a)." *United States v. LaBarca*, 2020 WL 6305968, at *3–4 (S.D.N.Y. Oct. 28, 2020) (citation omitted).

On January 20, 2021, the Court denied LaBarca's "Motion for Reconsideration." The Court found that: **(i)** "there has been a marked decrease in positive COVID-19 cases at FCI Schuylkill over the past month"; **(ii)** the Court "fully and carefully considered . . . . [LaBarca's] need for medical care . . . . in rendering its decision to deny his [first] motion. . . . [He] offers nothing that the Court might have overlooked in this regard"; and **(iii)** "[d]anger to the community and the 18 U.S.C. § 3553(a) factors continue to weigh heavily against any sentence reduction." *United States v. LaBarca*, 2021 WL 195996, at *3, 5 (S.D.N.Y. Jan. 20, 2021) (citations omitted).

## II.    Second Motion for Compassionate Release

On March 8, 2021, LaBarca filed a "Second Motion to Reduce [His] Sentence," along with letters dated March 19, 2021, March 22, 2021, May 25, 2021, July 23, 2021, November 8, 2021, December 1, 2021, December 21, 2021, and January 10, 2022. In his second motion, LaBarca contends that: **(i)** "[He] was afflicted with Covid-19 in the spring. Sadly, since then, he is still unwell . . . [he] is likely a long-hauler with . . . . debilitating fatigue and malaise" and "there is no follow-up care for long-haul COVID-19 symptoms." July 23, 2021 Ltr. at 1; Jan. 10, 2022 Ltr. at 5; see also Nov. 8, 2021 at 1; Dec. 1, 2021 Ltr. at 3; **(ii)** "[LaBarca] has degenerative disc disease and needs spinal surgery [and] he . . . expects that the window for surgical consultation of his affected spinal discs will soon close as the Omicron variant spreads and restrictions on travel are imposed, resulting in still further pain and anxiety." Dec. 21, 2021 Ltr. at 1; see also Dec. 1, 2021 Ltr. at 3; **(iii)** "[LaBarca] has hypothyroidism, which creates a host of collateral problems, and is worsening. . . . However, for some time now, there has been no medical doctor on staff at FCI Schuylkill and no prescription drugs are readily available. . . . BOP neglect [may] lead to a cardiac event for [LaBarca]." Dec. 1, 2021 Ltr. at 3–4; Nov. 8, 2021 Ltr. at 1–2; and **(iv)** "Based on . . . . his positive prison record and established

rehabilitation Mr. Labarca poses no danger to the community." Second Mot. at 10.

On March 12, 2021, the Government filed its opposition to LaBarca's second motion for compassionate release. The Government also submitted LaBarca's BOP medical records, dated March 31, 2020 to December 29, 2021.[2] The Government argues that: **(i)** "[W]ith respect to [LaBarca's] complaints that he is experiencing ongoing COVID-19 symptoms, . . . BOP medical staff has responded to [LaBarca's] complaints – including by ordering an abdominal x-ray, which did not indicate any organ damage [from COVID-19]." Gov't Opp. at 5–6; Nov. 22, 2021 Gov't Ltr. at 2; **(ii)** "FCI Schuylkill is appropriately addressing [LaBarca's] back condition – first by scheduling him for surgery in July 2020 . . . . [which] he refused [] due to COVID . . . . and now by working to have him seen by a surgeon in the coming month." Dec. 23, 2021 Gov't Ltr. at 1 (citation omitted); **(iii)** "[LaBarca's] medical records demonstrate . . . that his hypothyroidism, which BOP medical recently diagnosed, is being monitored and treated." Nov. 22, 2021 Gov't Ltr. at 2; and **(iv)** "release of [LaBarca] 'poses a danger to the community' due to: (1) the 'very serious' nature of the instant crimes . . . and (2) his extensive criminal history." Gov't Opp. at 6 (citation omitted).

## III. Legal Standard

"Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies." *See United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020).

"When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Beniquez*, 2021 WL 260225, at *2 (S.D.N.Y. Jan. 26, 2021). "The defendant has the burden to show he is entitled to a reduction." *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

"The Court [] looks to § 1B1.13 for guidance in the exercise of its discretion." *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020). "The district court has the discretion 'to

---

[2] The Government submitted three sets of BOP medical records: **(i)** medical records dated March 31, 2020–March 3, 2021 ("Med. Records I"), which were submitted on March 12, 2021; **(ii)** medical records dated February 16, 2021–November 4, 2021 ("Med. Records II"), which were submitted on November 26, 2021; and **(iii)** medical records dated November 15, 2021–December 29, 2021 ("Med. Records III"), which were submitted on January 13, 2022. The Government has requested that these records be maintained under seal.

consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring.'" *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

"[T]he Section 3553(a) factors and the danger [a defendant] poses to the community override any extraordinary and compelling reasons justifying his release." *United States v. Serrano*, 2020 WL 5259571, at *4 (S.D.N.Y. Sept. 3, 2020); *United States v. Roney*, 833 F. App'x 850 (2d Cir. 2020).

"Where a defendant has contracted and recovered from coronavirus, courts in this district have declined to find extraordinary and compelling factors favoring release." *United States v. Wedd*, 2021 WL 1338754, at *2 (S.D.N.Y. Apr. 9, 2021).

"[C]ourts in this circuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that . . . he does not face an extraordinary risk from COVID-19." *United States v. Kosic*, 2021 WL 1026498, at *3 (S.D.N.Y. Mar. 17, 2021).

### IV. Medical Findings

The Court's medical findings are as follows:

1. LaBarca's BOP medical records reflect that he tested positive for COVID-19 on February 16, 2021. See Med. Records I at 4, 70. He was diagnosed with an "asymptomatic" case of COVID-19. Id. at 75; see also id. at 10 (Feb. 16, 2021 record stating: "COVID positive. No reported symptoms [including] . . . No: Cough or shortness of breath, Nasal congestion, runny nose, sore throat, Fatigue, aches and pains, Headache, persistent pain in chest, Loss of taste and/or sense of smell, Diarrhea, Vomiting[.]"). FCI Schuylkill medical personnel "placed [him] in . . . medical isolation" and he was regularly "followed [i.e., monitored] by [BOP] Health Services" throughout the infection period. Id. at 4–10, 15; see also Nov. 15, 2021 Warden Ltr. at 1.

    On March 2, 2021, FCI Schuylkill medical personnel determined that LaBarca had recovered from COVID-19. Med. Records I at 70 ("[LaBarca's] case [of] COVID-19 . . . [is] resolved"). Following his recovery from COVID-19, LaBarca has "complained of shortness of breath and abdominal pain." Nov. 15, 2021 Warden Ltr. at 1; see also Med. Records II at 32, 37. The medical records reflect that medical

personnel responded to LaBarca's complaints by "complet[ing] . . . a chest x-ray" in which "no abnormalities [were] noted." Med. Records II at 37, 42; Nov. 15, 2021 Warden Ltr. at 1.

2. LaBarca suffers from underlying medical conditions, including among other things, "hypothyroidism." Med. Records II at 4, 68; *LaBarca*, 2020 WL 6305968, at *3. On October 13, 2021, BOP medical personnel "completed . . . lab tests [which] showed increased TSH [i.e., thyroid levels]" and prescribed levothyroxine to treat it. Nov. 15, 2021 Warden Ltr. at 2; Med. Records II at 87. According to LaBarca's medical records and a letter from the FCI Schuylkill Warden dated November 15, 2021, LaBarca's hypothyroidism continues to be monitored and treated by medical personnel "through routine labs and medication" administered on a daily basis. Nov. 15, 2021 Warden Ltr. at 2; Med. Records III at 6, 19.

3. LaBarca's medical records indicate that on July 26, 2021, he "complain[ed] [of] . . . pain in [his] neck but refused [an] outside [surgical] appointment due to COVID." Med. Records II at 14; see also Nov. 15, 2021 Warden Ltr. at 1–2. "LaBarca's neck pain has been treated [by BOP medical personnel] with medication," namely "25 MG [of] Amitriptyline each evening." Nov. 15, 2021 Warden Ltr. at 2; Med. Records II at 34; Med. Records III at 29. The "medication is effective in providing relief of [his] chronic neck pain." Med. Records II at 11.

On November 4, 2021, LaBarca "requested to have the surgery on his neck completed . . . [after] hav[ing] previously refused a surgical consult." Nov. 15, 2021 Warden Ltr. at 2; see also Med. Records II at 1 (Nov. 4, 2021 record stating: "[LaBarca] [c]omplains of . . . . chronic pain in neck. [He] [s]tates he refused surgery [in July 2021] due to COVID and is asking if he can now have it done."). According to a letter from the FCI Schuylkill Warden dated January 4, 2022, "Labarca is scheduled for a neurosurgery consult in January of 2022" (but "[d]ue to safety and security concerns, [BOP] cannot release the exact date of this appointment"). See Jan. 4, 2022 Warden Ltr. at 1.

4. LaBarca is vaccinated against COVID-19. He received the first dose of the Pfizer/BioNTech vaccine on March 30, 2021 and the second dose on April 20, 2021. See Med. Records II at 78.

5. As of January 21, 2022, there were 87 active COVID-19 cases at FCI Schuylkill out of a total inmate

5

population of 1,083. COVID-19 Cases, BOP.

6. As of January 21, 2022, 1,009 FCI Schuylkill inmates had been vaccinated. COVID-19 Vaccine, BOP.

V.  **Analysis**

   (1) **Exhaustion of Administrative Remedies**

On August 8, 2021, LaBarca wrote a letter to the Warden of FCI Schuylkill "seeking . . . compassionate release" based upon "the current number of active COVID-19 cases in the prison[,] . . . the continued harsh and extreme conditions of confinement[,] [and] . . . [his] underlying chronic medical conditions [including] . . . . asthma, high blood pressure, high cholesterol, diabetes, and Barrett's syndrome." Second Mot. Ex. A at 1–2. On August 28, 2021, the Warden denied LaBarca's request, stating: "A review of your case indicates that you were appropriately denied Compassionate Release[] on May 11, 2020 . . . . Since your denial, no additional relevant policy related information has been submitted that would warrant reconsideration for Compassionate Release." Second Mot. Ex. B at 1.

It is somewhat unclear as to whether LaBarca has exhausted his administrative remedies. He appears to be raising additional claims in his second motion that he did not raise in his first motion or in his motion for reconsideration, including that: **(i)** "[he] was afflicted with Covid-19 in the spring [and] . . . is likely a long-hauler with . . . . debilitating fatigue and malaise"; and **(ii)** "[he] has hypothyroidism, which creates a host of collateral problems, and is worsening." July 23, 2021 Ltr. at 1; Dec. 1, 2021 Ltr. at 3.

LaBarca's additional claims may not have been properly presented to the Warden of FCI Schuylkill and, therefore, may not have been exhausted. See, e.g., United States v. Gotti, 2020 WL 7706828, at *2 (S.D.N.Y. Dec. 29, 2020) ("It is well-settled that a defendant must show administrative exhaustion with respect to the specific basis for relief upon which he is relying."); see also United States v. Nwankwo, 2020 WL 7335287, at *1 (S.D.N.Y. Dec. 14, 2020).

   (2) **The Section 3553(a) factors and the danger a defendant poses to the community override any extraordinary and compelling reasons justifying his release**

A sentence reduction is inconsistent with the § 3553(a) sentencing factors and the danger posed to the community. As the Court held in its October 28, 2020 and January 20, 2021 decisions denying LaBarca's

first motion and reconsideration motion, "Defendant's Motion [] fails to [overcome] the purposes of sentencing . . . , including 'to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant,'" including whether "the defendant poses a danger to the community." *LaBarca*, 2020 WL 6305968, at *4–5 (second alteration in original) (citation omitted); *see also LaBarca*, 2021 WL 195996, at *4.

LaBarca's offense level of 40 and his criminal history category of V, among other things, continue to demonstrate that he poses "a danger to the safety of the community." *LaBarca*, 2020 WL 6305968, at *4–5. LaBarca's underlying crimes were extremely serious and endangered the community. As part of the racketeering count to which he pleaded guilty, LaBarca accepted responsibility for "multiple crimes," see Plea Hr'g Tr. at 32:10–11, including that he "orchestrated the cold-blooded murder of someone who believed LaBarca to be his friend" and "did so while surrounded and supported by persons who now claim that they will help keep LaBarca on the straight and narrow if he is released." *LaBarca*, 2020 WL 6305968, at *5 (alterations and citations omitted). LaBarca also "trafficked large quantities of a high-potency strain of marijuana known as 'hydro'" into New York City and was a "major importer and trafficker of . . . ecstasy." PSR ¶¶ 41, 43; Gov't Sentencing Submission at 2. He also "participat[ed] in a violent extortion" and "controlled and worked as part of a large-scale bookmarking operation . . . . at least from the late 1990's through 2010." Gov't Sentencing Submission at 3; PSR ¶ 45. According to the Government, LaBarca was a "decades-long participant in the Gambino crime family's enterprise" and "is a dangerous man with deep mafia ties who has shown himself capable of murder." *LaBarca*, 2020 WL 6305968, at *5 (alterations omitted) (quoting Gov't Opp. at 7). A release would endanger the community and would not reflect the seriousness of the offense, promote respect for the law, or protect the public from further crimes. *See United States v. Castelle*, 2021 WL 1199471, at *3 (S.D.N.Y. Mar. 30, 2021) ("[The court] cannot conclude that release is proper. [Defendant] committed a serious crime while an active participant in an organized crime family . . . and could endanger the community upon release."); *see also United States v. Datello*, 2020 WL

7

4505678, at *1 (S.D.N.Y. Aug. 4, 2020) ("Defendant is a longtime soldier in [a] Crime Family. . . . He himself made efforts to murder an individual who betrayed him and the Family; [he] conspired to deal large quantities of cocaine and heroin; and engaged in extortion[] . . . . Releasing defendant because of the pandemic . . . . would not be just punishment[,] . . . would not give sufficient weight to [his] disrespect for the law[,] [and] . . . would fail to protect the public from further crimes by Defendant."); *United States v. Urso*, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019).

LaBarca, as noted, has a high criminal history of V. Between 1991 and 2003, he was convicted of numerous offenses, including "Possession of Stolen Mail," "Larceny," "Promoting Gambling – 1st Degree," "Promoting Gambling – 2nd Degree," "Criminal Sale of a Controlled Substance – 5th Degree," and "Attempted Coercion." PSR ¶¶ 96–109. LaBarca's high criminal history category under the caselaw does not support compassionate release. *See United States v. Bolino*, 2020 WL 4749807, at *6 (E.D.N.Y. Aug. 17, 2020), *aff'd*, 2021 WL 3871262 (2d Cir. Aug. 31, 2021) ("Defendant has a long history with [an] organized crime family and his extensive, violent criminal history proves that prison has not deterred his unlawful predilections. . . . To reduce defendant's sentence would be diminishing his transgressions and undermining the goals of [his] original sentence, among them, the need to dispense adequate punishment for defendant's multiple acts throughout his criminal career and to deter others from emulating his behavior."); *United States v. Kaid*, 2021 WL 2134793, at *4 (S.D.N.Y. May 25, 2021) ("Given [defendant's] lengthy history of serious criminal conduct, he presents an obvious risk of recidivism as well as a danger to the community.").

LaBarca committed the underlying offense while he was on parole (following his Attempted Coercion conviction). PSR ¶ 111. LaBarca's commission of crimes while under supervision suggests that early release from prison would pose a danger to the community. *See United States v. Sanchez*, 2020 WL 2787654, at *8 (S.D.N.Y. May 29, 2020) ("[Defendant] committed the instant offense while on state parole. . . . This fact is evidence of [defendant's] inability to obey the law, an inability to adhere to any terms of release that might be imposed, and, therefore, that he poses a danger to the public."); *United States v. Mack*, 460 F. Supp. 3d 411, 417 (S.D.N.Y. 2020) ("[defendant's] commission of the instant offense while on parole demonstrate

that he is a danger to the community").

### (3) No Extraordinary and Compelling Circumstances

The Court assumes without deciding that LaBarca exhausted his administrative remedies (see supra discussion at p. 6) and gives LaBarca the benefit of the doubt as to whether he exhausted his remedies.

At the same time, LaBarca has not met his burden of proving that any extraordinary and compelling circumstances exist or support his early release, as follows:

LaBarca had an asymptomatic case of COVID-19 and recovered. See Med. Records I at 4, 70. "Where a defendant has contracted and recovered from coronavirus, courts in this district have declined to find extraordinary and compelling factors favoring release." *Wedd*, 2021 WL 1338754, at *2; *see, e.g.*, *Kosic*, 2021 WL 1026498, at *3 ("Having contracted the virus and recovered, [defendant's] reason for a sentence reduction – namely, that it is necessary to protect his health – 'is significantly less compelling' . . . . On this record, [defendant] has failed to establish . . . an extraordinary and compelling reason warranting a sentence reduction." (citation omitted)). He "does not explain how . . . long-haul [COVID-19] . . . would increase his risk of severe illness or death should he become re-infected." *United States v. Hill*, 2021 WL 5040264, at *1 (E.D. Pa. Oct. 29, 2021) ("[Defendant] contracted COVID . . . and reports that he continues to suffer from 'long-haul' COVID effects [including] fatigue . . . . [He] does not explain how this syndrome would increase his risk of severe illness or death . . . . Given these circumstances, the risks to [defendant's] health do not present an extraordinary or compelling reason to justify compassionate release.").

LaBarca is vaccinated. See Med. Records II at 78. "Courts have consistently denied compassionate release when the defendant is fully vaccinated, even when other health conditions are present." *United States v. Farmer*, 2022 WL 47517, at *3 (S.D.N.Y. Jan. 5, 2022); *Kosic*, 2021 WL 1026498, at *3 ("[C]ourts in this circuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that . . . he does not face an extraordinary risk from COVID-19."). The Court rejects LaBarca's contention that "the risk of breakthrough infection [posed by] . . . the new variants of Delta and Omicron" supports compassionate release." Jan. 10, 2022 Ltr. at 7. While courts have recognized that "breakthrough infections have occurred

9

in vaccinated people due to the Delta [and Omicron] variant[s][,] . . . generalized statements about vaccine efficacy do not amount to extraordinary and compelling circumstances – the vaccine is still highly effective at preventing death and serious injury, even against the Delta and Omicron variants." *Farmer*, 2022 WL 47517, at *3; *see also United States v. Jaber*, 2022 WL 35434, at *3 (S.D.N.Y. Jan. 4, 2022) ("[The court] cannot ignore the fact that the Omicron variant appears to be more resistant to the vaccines . . . . However, recent studies have revealed that . . . vaccination still provides excellent protection against the most severe consequences of even this new variant – death and extended hospitalization.").

LaBarca asserts that the conditions of his confinement have been "harsher and more punitive than [expected]" due to, among other things, the "months [spent] . . . on lockdown/quarantine, . . . with no communication with [his] family, attorney or the outside world." Second Mot. at 6; Jan. 10, 2022 Ltr. at 8. He contends that the harshness of his time in prison during the pandemic "warrant[s] release." Second Mot. at 6. Courts in this District have consistently held that "generalized statements about the conditions of confinement do not constitute extraordinary or compelling reasons for compassionate release." *Farmer*, 2022 WL 47517, at *3 ("[Defendant] asserts that the conditions of his confinement have been particularly harsh and restrictive, 'marked by months of lockdowns[] [and] isolation in quarantine' . . . . He contends that the unanticipated harshness of his time in captivity merits a correspondingly shorter sentence. . . . [H]owever, . . . 'conditions of confinement' caused by the pandemic . . . do not 'constitute extraordinary or compelling reasons for a sentence reduction.'" (citations omitted)); *see also United States v. Padilla*, 2020 WL 3958790, at *1 (S.D.N.Y. July 13, 2020).

## VI.  Conclusion & Order

For the reasons stated above, the Government's request to file Defendant LaBarca's BOP medical records under seal (see supra footnote 2) is granted. Mr. LaBarca's Second Motion for Compassionate Release [Dck. # 1070] is respectfully denied.

Dated: New York, New York
January 21, 2022

*Richard M. Berman*
_____
**RICHARD M. BERMAN, U.S.D.J.**